# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THERESA J. PEREZ, | ) | 1:08cv0463 BAK |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Theresa J. Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 25, 2008, the action was reassigned to the Honorable Theresa A. Goldner for all purposes. On April 6, 2009, the action was temporarily reassigned to the Honorable Dennis L. Beck due to Judge Goldner's resignation.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on January 31, 2005, alleging disability since May 1, 2002, due to depression and medication.  AR 119-126.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On September 10, 2007, ALJ James Berry held a hearing.  AR 30-58.  He denied benefits on October 15, 2007.  AR 13-22.  The Appeals Council denied review on February 11, 2008.  AR 6-9.

Hearing Testimony

ALJ Berry held a hearing on September 10, 2008, in Bakersfield, California.  Plaintiff appeared with her attorney, Geoffrey Hayden.  Vocational expert ("VE") Kenneth Ferra and witness Kristen Wheelan also appeared and testified.  AR 30.

Plaintiff testified that she was 46 years old at the time of the hearing.  She completed the tenth grade and can read and write.  Plaintiff was five feet tall and weighed 282 pounds.  She does not have a driver's license and does not drive a car.  AR 34.

Plaintiff explained that she last worked in 2001 at a supermarket deli, but had to stop working because her medication was making her "work slow."  Prior to that job, Plaintiff worked in housekeeping.  AR 35.  She could not work now because of her medication.  AR 36.

When questioned by her attorney, Plaintiff testified that she was receiving mental health treatment through Kern County for major depression, which started after her two brothers passed away in 1998 and 2004.  AR 37.

Plaintiff testified that she used to hear voices, and now has trouble sleeping, socializing and taking care of her personal hygiene.  AR 38, 40.  She also has crying spells about once a week and did not think she could keep her mind on something for two hours at a time.  AR 39, 41.  Plaintiff has attempted suicide six times, all of which were prior to her beginning treatment with Kern County seven years ago.  AR 40-41.  She does not have a social life and lives with her parents, who support her.  AR 39.  During the day, Plaintiff stays home and lays down a lot.  AR 41.  She cooks once a week and does not do housework.  AR 42.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   Plaintiff also explained that she has trouble standing up because of her weight.  AR 41.

2   As for her mental health, she believed she was getting better because group therapy and her

3   medication were helping.  AR 42, 48.  She was taking Depakote, Abilify, and Prozac.  AR 42.

4   Plaintiff believed that if she had to work eight hours a day, she could not stay awake for

5   the whole time.  AR 42.  Because of her weight, which has increased as a result of her

6   medication, Plaintiff thought she could stand for about three hours in an eight hour day, walk for

7   about 20 minutes and sit for about four hours.  She thought she could lift and carry five to ten

8   pounds.  AR 47.

9   Plaintiff was currently attending group therapy twice a week for one group, and twice a

10  month for another group.  She sees the doctor once a month.  AR 43.

11  When questioned by the ALJ, Plaintiff testified that she had a boyfriend and he

12  sometimes picks her up and takes her to lunch "or something."  She went on a trip to Orlando

13  with her mother a year ago.  AR 44.

14  Plaintiff's case manager, Kristen Wheelan, also testified.  When questioned by the ALJ,

15  she explained that she was an unlicensed mental health counselor who worked under the

16  supervision of a Board Certified psychiatrist.  AR 49.

17  Ms. Wheelan testified that she has known Plaintiff since 2001, and has seen her monthly

18  for the past few years.  AR 50.  Ms. Wheelan believed that Plaintiff has difficulty remembering

19  instructions and following through, and would have significant problems if she had a job.  She

20  would also have problems with stress and interpersonal relationships with employers, co-workers

21  and the public.  AR 51.  Ms. Wheelan believed that Plaintiff has reached the limit of what she's

22  able to do and explore given her resources.  She has achieved many treatment goals, but it would

23  be unrealistic to believe that she could be employed.  AR 53.  Plaintiff was incapable of

24  managing her own funds because she is very suggestible.  AR 53.  Ms. Wheelan believed that

25  Plaintiff could live independently with financial support.  AR 54-55.

26  The ALJ next questioned the VE, and asked him to assume a person of Plaintiff's age,

27  education and work experience.  This person could lift and carry 20 pounds occasionally, 10

28  pounds frequently, stand, walk and sit for six hours each, perform simple, repetitive tasks and

maintain attention, concentration, persistence and pace.  This person could also relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules.  The VE testified that this person could perform Plaintiff's past work as a housekeeper.  AR 57.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry five to ten pounds, sit for four hours maximum, stand for three hours maximum, and walk for approximately 20 minutes.  This person could not maintain attention, concentration, persistence or pace for two hours increments, and would have difficulty relating to and interacting with others, adapting to usual changes in work settings and adhering to safety rules.  The VE testified that this person could not perform any work.  AR 57.

For the third hypothetical, Plaintiff's attorney asked the VE to assume the same physical parameters in the first hypothetical.  However, this person would have difficulty accepting instructions from supervisors and interacting with co-workers based on emotional instability, poor impulse control and poor frustration tolerance.  This person would also have difficulty in maintaining regular attendance due to depression, emotional instability and poor coping skills.  The VE testified that this person could not perform any work.  AR 57-58.

Medical Evidence

The medical records show that Plaintiff received treatment from Kern County Mental Health from 2001 through at least August 2007.  She participated in group therapy throughout the time period at issue one to two times a week and also met numerous times with counselors.  AR 215-276, 355-386, 429-461.

On April 5, 2005, Plaintiff underwent a psychiatric evaluation by Richard Feldman, M.D., at Kern County Mental Health. Plaintiff complained that she had a lot of anger.  Plaintiff's mood was subdued but with occasional lightening.  She described some mild auditory and possible visual hallucinations that were not problematic.  Her intelligence appeared below average.  Dr. Feldman described Plaintiff as "maintained on several medications with some apparent benefit."  He diagnosed major depressive disorder, single episode, moderate, some possible psychotic features improved with current treatment; polysubstance dependence disorder in sustained remission; possible intermittent explosive disorder and borderline personality disorder with

possible antisocial features.  He provided Plaintiff with her current medications and added Depakote.  AR 380-382.

On June 23, 2005, Plaintiff saw Greg Hirokawa, PhD., for a comprehensive psychiatric evaluation.  Plaintiff complained of depression and having difficulty being around other people.  In fact, she stated that she was willing to work if she did not have to work with a lot of people.  Dr. Hirokawa noted that she last worked in 2001 but stopped "due to not passing probation."  AR 321-322.  Plaintiff reported using drugs heavily from age 17 to 24, and last using drugs six years ago.  Dr. Hirokawa noted that her ability to sustain attention was poor based upon her inability to repeat numbers and her request to have questions repeated.  AR 323.

On mental status examination, Plaintiff's hygiene was fair and her facial expressions appeared sad.  Her mood was depressed, and she complained of poor sleep and varied appetite.  Anhedonia was present and her affect was tearful.  Plaintiff's intellectual functioning appeared below average and Dr. Hirokawa thought she may have a learning disability.  Plaintiff's memory appeared intact and her judgment was fair.  Dr. Hirokawa did not believe there were any signs of exaggeration of symptoms.  AR 323-325.

Dr. Hirokawa diagnosed major depressive disorder with psychotic features and polysubstance dependence.  Her reported symptoms appeared consistent with the history and mental status examination.  Her prognosis was fair.  Dr. Hirokawa believed that Plaintiff could perform simple, repetitive tasks, but would have difficulty with more detailed, complex tasks.  She would have difficulty accepting instructions from supervisors and interacting with co-workers based on her emotional instability, poor impulse control and poor frustration tolerance.  Plaintiff would likely have problems dealing with change in the work setting and would have difficulty maintaining regular attendance.  Dr. Hirokawa believed that Plaintiff was not capable of handling her own funds and recommended ongoing counseling and a psychiatric medication evaluation.  AR 325-326.

X-rays of her lumbar spine taken on June 24, 2005, revealed mild facet joint arthritis at L4-L5 and L5-S1.  AR 331.

On June 24, 2005, Plaintiff saw Juliane Tran, M.D., for a comprehensive orthopedic evaluation.  Plaintiff complained mainly of back pain for approximately 10 years.  She reported that she could occasionally perform house chores and cook, but is limited because of back pain.  On examination, Plaintiff was mildly obese and was able to walk without assistance, tolerate sitting and get on and off the examination table.  Her mobility was good.  Dr. Tran described her effort as fair.  On palpation, she was slightly tender over the right L5, S1 lumbar level and mild to moderately tender over the right lateral epicondyle of the right elbow and proximal radius of the right arm.  Sensation was decreased in the right thumb and somewhat decreased in the left L5 dermatone.  Muscle strength was normal, except in the right hand, though it was unclear if this was from pain, decreased effort or true weakness.  AR 327-329.

Dr. Tran diagnosed back pain, probably lumbosacral sprain/strain, with mild pain on lumbar range of motion.  He noted that the examination findings did not correspond to decreased sensation in her left leg.  Dr. Tran also diagnosed status-post right proximal radius fracture with possible decreased sensation over the right medial nerve or right suprafascial radial nerve.  Dr. Tran believed that Plaintiff could not lift more than 25 pounds occasionally or more than 10 pounds frequently, temporarily for three months.  She may be restricted with activities involving frequent grasping or frequent fingering, also temporarily for three months.  Plaintiff had no further restrictions.  AR 330.

On July 21, 2005, State Agency physician John T. Bonner completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could lift 25 pounds occasionally, 10 pounds frequently, stand and/or walk for a total of six hours in a day and sit for about six hours.  She could occasionally stoop and crawl and could frequently climb, balance, kneel and crouch.  AR 475-482.

Progress notes from Plaintiff's first group therapy session on July 26, 2005, indicate that Plaintiff seemed to get along with the other new group members and stopped with side-conversation when asked.  She participated in all aspects of therapy.  AR 366.

On August 3, 2005, Plaintiff reported that she continued to hear voices and have visions.  AR 364.

1    On August 13, 2005, State Agency physician Harvey Biala, M.D., completed a Mental

2 Residual Functional Capacity Assessment form.  He opined that Plaintiff was moderately limited

3 in her ability to understand, remember and carry out detailed instructions.  Plaintiff could

4 understand and remember simple instructions, carry out short instructions, perform activities

5 with directions without additional support, maintain attention in two hour increments,

6 sufficiently maintain socially appropriate behavior, respond appropriately to criticism and

7 interact appropriately with the general public.  Plaintiff could also appropriately respond to

8 changes in the work setting.  AR 335-337.

9    In rating her functional limitations, Dr. Biala opined that Plaintiff had mild restrictions in

10 activities of daily living, mild difficulties in maintaining social functioning and moderate

11 difficulties in maintaining concentration, persistence or pace.  AR 350.

12    Progress notes from group therapy on August 29, 2005, indicate that Plaintiff was fairly

13 quiet and a bit isolative.  AR 361.

14    During a visit with Dr. Feldman on September 7, 2005, Plaintiff's mood was depressed,

15 anxious and irritable.  "Sedation" was listed as a side effect of her medication.  Her insight and

16 judgment were fair, her memory was good and her attention/concentration was intact.  Plaintiff's

17 intelligence was average.  He diagnosed major depression and opined that Plaintiff could not

18 work, finding a moderate disability.  AR 372-373.

19    Group therapy notes from September 2005 indicate that Plaintiff was talkative and

20 cooperative.  AR 457.

21    Group therapy notes from October 28, 2005, indicate that Plaintiff was in a "pretty good

22 mood," and although Plaintiff was stressed, contact with her mother was helping.  Plaintiff was

23 talkative and interacted with other group members.  AR 434.

24    On January 10, 2006, State Agency physician Marina C. Vea, M.D., completed a Mental

25 Residual Functional Capacity Assessment form.  Dr. Vea opined that Plaintiff was moderately

26 limited in her ability to understand, remember and carry out detailed instructions.  Plaintiff could

27 perform short and simple tasks, maintain attention in two hour increments, sufficiently maintain

28 socially appropriate behavior, respond appropriately to criticism and interact appropriately with

1   the general public.  Plaintiff could also appropriately respond to changes in the work setting.  AR

2   491-489.

3        In rating her functional limitations, Dr. Vea opined that Plaintiff had mild restrictions in

4   activities of daily living, mild difficulties in maintaining social functioning and moderate

5   difficulties in maintaining concentration, persistence or pace.  AR 501.

6        On February 28, 2006, therapist Richard S. Carley conducted a clinical reassessment.

7   Plaintiff complained that her moods go up and down, that she frequently gets upset and that she

8   has a "short fuse."  She also reported hearing voices.  Plaintiff reported no close friends.  She

9   goes to "CFLC" to watch movies, and for Christmas activities, dances and bingo.  Plaintiff had

10  not worked since 2001 because of side effects from her medication.  Plaintiff reported that she

11  enjoyed watching movies on television and shopping with her mother.  Her intelligence was rated

12  in the low-average range.  She maintained poor eye contact.  Judgment and insight were fair.  He

13  diagnosed major depressive disorder, recurrent, moderate, rule out bipolar disorder,

14  polysubstance abuse in sustained remission, and borderline personality disorder.  Her current

15  GAF was 46.  AR 543-549.

16       On March 3, 2006, Plaintiff saw J. Zada, M.D., at Kern County Mental Health.  She

17  complained that her moods were up and down.  Her mood was anxious and she had auditory

18  hallucinations.  Insight, memory and judgment were fair and her attention/concentration were

19  intact.  AR 541.  He diagnosed mood disorder, rule out bipolar disorder.  He opined that she

20  could not work and described her disability as moderate.  Her prognosis was fair.  AR 541-542.

21       In April and May 2006, Dr. Zada noted that she was doing fairly well.  Insight, judgment

22  and memory were fair and her attention/concentration were intact.  AR 537-540.

23       On June 30, 2006, Dr. Zada noted that Plaintiff was doing fairly well, though she

24  continued to be unable to work.  AR 535-536.

25       On July 28, 2006, Dr. Zada noted that Plaintiff continued to improve.  Her mood was sad,

26  speech was slow, eye contact was intermittent and her psychomotor skills were decreased.

27  Insight, memory and judgment were fair.  Attention/concentration were intact, though she could

28  not work.  AR 533-534.

Also on July 28, 2006, Dr. Zada completed a Mental Assessment. He opined that Plaintiff was moderately limited in her ability to remember locations and work-like procedures and in her ability to understand and remember detailed instructions. She was markedly limited in her ability to understand very short and simple instructions. She was slightly limited in her ability to carry out very short and simple instructions and markedly limited in her ability to carry out detailed instructions. Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, to sustain an ordinary routine without special supervision, to work in coordination within a proximity to others without being distracted by them, to make simple work related decisions, and to complete a normal work-day or work-week without interruptions from psychologically based symptoms. She was markedly limited in her ability to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior. Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, to be aware of normal hazards and to travel in unfamiliar places. Plaintiff was slightly limited in her ability to set realistic goals and to make plans independently. AR 506-510.

Plaintiff returned to Dr. Zada on October 13, 2006. He indicated that Plaintiff was doing fairly well. AR 531-532.

On November 17, 2006, Dr. Zada indicated that Plaintiff has been doing fairly well. Insight, memory and judgment were fair. Attention/concentration were intact. AR 529-530.

Treatment notes from Dr. Zada dated December 15, 2006, indicate that Plaintiff was doing fairly well. Nonetheless, he indicated that Plaintiff could not work and described her disability as moderate. He advised Plaintiff not to work full time. AR 527-528.

On August 9, 2007, Plaintiff saw Dr. Feldman. No medication side effects were noted. Plaintiff's mood was euthymic and she complained of auditory and visual hallucinations. Memory and judgment were good, insight was fair and attention/concentration was intact. Her

1  intelligence was noted as average.  Dr. Feldman opined that Plaintiff could not work and that her
2  prognosis was fair.  AR 511-512.

3       ALJ's Findings

4       At the outset, the ALJ explained that Plaintiff had filed a previous application, which was
5  denied after a hearing on May 28, 2004.  A presumption of continuing non-disability applies to
6  subsequent claims involving unadjudicated periods.  SSR 97-4(9).  The ALJ determined that
7  Plaintiff had not demonstrated "changed circumstances" to overcome this presumption for the
8  unadjudicated period and warrant a change from the prior residual functional capacity ("RFC")
9  finding.  AR 16.

10       In analyzing her current application, the ALJ found that Plaintiff had the severe
11  impairments of major depressive disorder and a back strain.  Despite this, Plaintiff retained the
12  RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, and to sit, stand and/or walk
13  for six hours out of an eight-hour day.  Mentally, Plaintiff could perform simple, repetitive tasks,
14  maintain attention, concentration, persistence and pace, relate to and interact with others, adapt to
15  usual changes in the work setting, and adhere to safety rules.  Based on the VE's testimony, the
16  ALJ found that Plaintiff could perform her past relevant work as a housekeeper.  AR 18-22.

17  **<u>SCOPE OF REVIEW</u>**

18       Congress has provided a limited scope of judicial review of the Commissioner's decision
19  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
20  the Court must determine whether the decision of the Commissioner is supported by substantial
21  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"
22  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
23  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
24  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at
25  401.  The record as a whole must be considered, weighing both the evidence that supports and
26  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler, 760 F.2d 993,*
27  *995 (9th Cir. 1985).*  In weighing the evidence and making findings, the Commissioner must
28  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

1  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

2  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

3  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

4  Cir. 1987).

5                                        **<u>REVIEW</u>**

6          In order to qualify for benefits, a claimant must establish that he is unable to engage in

7  substantial gainful activity due to a medically determinable physical or mental impairment which

8  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

9  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

10 such severity that he is not only unable to do her previous work, but cannot, considering his age,

11 education, and work experience, engage in any other kind of substantial gainful work which

12 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

13 The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

14 Cir. 1990).

15         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

16 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

17 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

18 found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

19 her disability; (2) has an impairment or a combination of impairments that is considered "severe"

20 (major depressive disorder and a back strain) based on the requirements in the Regulations (20

21 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which

22 meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

23 and (4) retains the RFC to perform her past relevant work.  AR 18-22.

24         Here, Plaintiff argues that the ALJ erred (1) in finding that she did not overcome the

25 presumption of continuing non-disability; and (2) in evaluating her subjective complaints.

26

27 _____

28     [3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

                                        11

**DISCUSSION**

A.    Presumption of Non-Disability

Plaintiff first argues that the ALJ's finding that she did not overcome the presumption of continuing non-disability is not supported by substantial evidence.  Plaintiff relies on the ALJ's treatment of the medical record and testimony in contending that her mental condition has deteriorated since May 28, 2004.

Because Plaintiff was found not disabled in the prior March 28, 2004, there is a continuing presumption of non-disability that she must overcome by proving changed circumstances indicating a greater disability.  *Chavez v. Bowen*, 844 F.2d 691, 693-94 (9th Cir. 1988).

> This court has stated that an ALJ's finding that a claimant is not disabled "create[s] a presumption that [the claimant] continued to be able to work after that date." *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir.1985).  The presumption does not apply, however, if there are "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985). An increase in the severity of the claimant's impairment would preclude the application of res judicata. *Id.*  The claimant need not, however, demonstrate that his medical or psychiatric condition has worsened to show changed circumstances.  Other changes suffice.  For example, a change in the claimant's age category, as defined in the Medical-Vocational Guidelines, constitutes a changed circumstance that precludes the application of res judicata. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.1988).  In addition, the Commissioner may not apply res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application. *Gregory v. Bowen*, 844 F.2d at 666.  Nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior claim. *Id.*

*Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1995) (footnote omitted).

1.    *Treatment of Medical Opinions*

In finding that Plaintiff's mental condition had not further deteriorated since the prior denial, the ALJ gave Dr. Hirokawa's consultive opinion "little weight" because Plaintiff's own testimony contradicted the severity of his findings.  AR 21.  As to Dr. Zada, one of Plaintiff's treating psychiatrists, the ALJ gives it less weight "than would typically be warranted" because he found it to be internally inconsistent.  AR 22.  Having rejected the treating and consultive opinions, the ALJ adopted the opinions of Dr. Biala and Dr. Vea, the State Agency physicians.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202, *citing Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In finding that Plaintiff's mental condition had not further deteriorated since the prior denial, the ALJ gave Dr. Hirokawa's consultive opinion "little wight" because Plaintiff's own testimony contradicted the severity of his findings. AR 21. As to Dr. Zada, one of Plaintiff's treating psychiatrists, the ALJ gives it less weight "than would typically be warranted" because

1   he found it to be internally inconsistent.  AR 22.  Having rejected the treating and consultive

2   opinions, the ALJ adopted the opinions of Dr. Biala and Dr. Vea, the State Agency physicians.

3         To reject the contradicted opinions of Dr. Zada and Dr. Hirokawa, then, the ALJ needed

4   to set forth specific and legitimate reasons that are supported by substantial evidence.  In

5   rejecting Dr. Zada's opinion, the ALJ explained, correctly, that Dr. Zada's Medical Source

6   Statement was inconsistent as he found Plaintiff to be "markedly limited" in her ability to

7   understand simple instructions, but only "moderately limited" in her ability to understand

8   detailed instructions.  AR 22.  *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ

9   may disregard treating physician's opinion when it is internally inconsistent).  In his review of

10   the medical evidence, the ALJ also notes Dr. Zada's and Dr. Feldman's generally consistent

11   findings in late 2006 and 2007 that Plaintiff had few or no complaints and was "fairly stable" or

12   "doing well."  AR 511-512, 527-528, 531-532, 535-536.  Moreover, during most, if not all, of

13   these visits, Plaintiff's attention and concentration were intact.

14         Insofar as Plaintiff argues that the ALJ should have recontacted Dr. Zada to clarify the

15   inconsistency, the ALJ had sufficient information to render his decision and therefore had not

16   duty to gather additional information.  20 C.F.R. § 416.912(e); *Thomas v. Barnhart*, 278 F.3d

17   947, 958 (9th Cir. 2002) (requirement to recontact treating source "triggered only when the

18   evidence from the treating medical source is inadequate to make a determination as to the

19   claimant's disability.");  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that

20   ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or

21   "the record is inadequate" to allow for proper evaluation of the evidence).  Here, rather than

22   finding that Dr. Zada's report was inadequate to make a determination regarding Plaintiff's

23   disability, the ALJ disagreed with the report and set forth specific and legitimate reasons for

24   doing so.

25         Plaintiff also suggests that the ALJ erred by not discussing Dr. Feldman's opinions.

26   However, while the ALJ reviewed Dr. Feldman's treatment of Plaintiff in his discussion of her

27   treatment with Kern County Mental Health, Dr. Feldman did not set forth any opinions as to

28   Plaintiff's abilities.  AR 21.  Although he indicated that Plaintiff could not work numerous times,

1   such findings of disability are reserved for the Commissioner and are not binding on the ALJ.  20

2   C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

3           As to Dr. Hirokawa, Plaintiff argues that the ALJ does not point to specific testimony in

4   finding that Dr. Hirokawa's severe limitations were contradicted by Plaintiff's own testimony.

5   After setting forth Dr. Hirokawa's findings, the ALJ found that Plaintiff's testimony "about what

6   she is able to do contradicts the severity of his assessed limitations. . ."  AR 21.  Yet Plaintiff

7   only testified to going to group therapy twice a week, seeing the doctor once a month,

8   occasionally going to lunch "or something" with her boyfriend, and taking a trip to Orlando with

9   her mother one year ago.  AR 43-44.  These activities do not sufficiently negate Dr. Hirokawa's

10  finding that Plaintiff would have difficulty accepting instructions, interacting with co-workers,

11  and dealing with change and maintaining regular attendance.

12          Although Defendant points to Plaintiff's group therapy notes to support the ALJ's

13  rationale, the Court cannot make such a tenuous inference, nor does it necessarily agree that

14  Plaintiff's progress in her group therapy negates Dr. Hirokawa's findings.  Defendant also

15  attempts to support the ALJ's finding by citing Plaintiff's inconsistent statements to Dr.

16  Hirokawa.  Defendant admits that the ALJ did not detail such statements, and thus the Court

17  cannot consider the statements.  A reviewing court cannot affirm an ALJ's decision denying

18  benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054

19  (*citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).

20          Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a

21  treating or examining physician, we credit that opinion "as a matter of law." *Lester v. Chater*, 81

22  F.3d 821, 834 (9th Cir. 1995).

23          As a corollary, the remaining opinions of the State Agency physician, upon which the

24  ALJ purportedly relied,[4] no longer constitute substantial evidence.  The opinions of non-

25  examining physicians constitute substantial evidence only where the opinions are consistent with

26  other independent evidence in the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

27

28          [4] There is no affirmative discussion of the weight afforded to the State Agency physician, but given the
    RFC, the ALJ could only have adopted their opinions.

1  2001).  Here, the ALJ should have credited Dr. Hirokawa's opinion, rendering the State Agency
2  physicians' opinions inconsistent with the remaining medical evidence.

3        The finding of error is bolstered by the fact that had the ALJ properly credited Dr.
4  Hirokawa's opinion, he likely would have analyzed the treating physician's opinions differently.
5  The error also makes Plaintiff's argument that the ALJ should have recontacted Dr. Zada more
6  persuasive because it makes it more plausible that he made a simple mistake in completing the
7  assessment form.

8        The Court therefore finds that the ALJ's treatment of the medical opinion evidence was
9  not supported by substantial evidence and was not free of legal error.  The Court will discuss the
10 remedy at the end of this opinion.

11       2.    *Ms. Wheelan's Testimony*

12       Plaintiff also points to the ALJ's treatment of Ms. Wheelan's in support of her argument
13 that her medical condition had worsened since the last ALJ decision.  Specifically, Plaintiff
14 contends that Ms. Wheelan's testimony is consistent with the opinions of Dr. Zada and Dr.
15 Feldman.

16       Ms. Wheelan is not a physician, psychologist or other "acceptable medical source"
17 pursuant to 20 C.F.R. 416.913(a), and is therefore a lay witness.  "In determining whether a
18 claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability
19 to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§
20 404.1513(d)(4), (e).  Such testimony is competent evidence and "cannot be disregarded without
21 comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).  If an ALJ disregards the
22 testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  *Id.*
23 Further, the reasons "germane to each witness" must be specific.  *Stout*, 454 F.3d at 1054; *see*
24 *also* *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

25       In his decision, the ALJ reviewed Ms. Wheelan's testimony and suggested that it was
26 somewhat inconsistent.  For example, the ALJ notes that Ms. Wheelan did not believe that
27 Plaintiff could manage her own funds, but then testified that she could live independently if she

28

1    had the financial means to do so.  AR 21, 54-55.  The ALJ therefore found that Ms. Wheelan's

2    testimony was inconsistent and was permitted to disregard it on this basis.

3    B.      Plaintiff's Subjective Complaints

4           Finally, Plaintiff argues that the ALJ failed to set forth legally sufficient reasons for

5    rejecting her subjective complaints.

6           In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

7    pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

8    subjective complaints:

9           An ALJ is not "required to believe every allegation of disabling pain" or other
             non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
10          However, to discredit a claimant's testimony when a medical impairment has been
             established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*,
11          169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
             the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ did not find
12          "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
             claimant's testimony must be clear and convincing." *Id.*

13

14          Social Security Administration rulings specify the proper bases for rejection of a
             claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
15          supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at
             57860 ("Although Social Security Rulings do not have the same force and effect as the
16          statute or regulations, they are binding on all components of the Social Security
             Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
17          *Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
             step three of the disability determination was contrary to agency regulations and rulings
18          and therefore warranted remand).  Factors that an ALJ may consider in weighing a
             claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
19          between testimony and conduct, daily activities, and "unexplained, or inadequately
             explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*,
20          885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

21          Plaintiff's argument seems to suggest that the ALJ did not set forth *any* reasons for

22   disbelieving her testimony as to the severity of her mental impairment.  However, a review of the

23   ALJ's decision reveals that he set forth numerous reasons in attempting to support his finding.

24   He first explained that despite Plaintiff's complaints of back pain, she sought little treatment for

25   physical problems.  AR 21.  He also noted that Dr. Tran found that Plaintiff's symptoms were not

26   entirely consistent with her examination findings.  AR 21.  Although Plaintiff does not contest

27   the ALJ's physical findings, the ALJ is entitled to cite these inconsistencies in assessing

28   Plaintiff's overall credibility.  The ALJ may use "ordinary techniques" in addressing credibility.

1  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically

2  flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

3       In discussing her mental health treatment, however, the ALJ set forth unpersuasive

4  reasons.  For example, he suggests that Plaintiff's mental impairments are somehow lessened

5  because "much of [her] upheaval was related to problems with her ex-husband . . . and financial

6  issues, as she wanted benefits so she would not have to live with her parents."  AR 21.  The

7  ALJ's take on the sources of Plaintiff's mental issues does not negate the severity of her

8  symptoms, nor does it suggest that she is not credible.  AR 21.

9       Finally, the ALJ cites changes in Plaintiff's medical record.  He explains that in February

10  2006, her therapist opined that she needed medication management, social skills training, anger

11  management, and relapse prevention, but "notes from later in 2006 and in 2007 report that the

12  claimant has few or no complaints, that she is compliant with her medications, and is 'fairly

13  stable' and 'doing well.'"  AR 21.  Again, however, these factors do not necessarily cast doubt on

14  her subjective complaints.  Indeed, "fairly stable" and "doing well" are relative terms.  Similarly,

15  that Plaintiff is compliant with her medications does not mean that her testimony wasn't credible.

16       Setting aside the improper reasons for discrediting Plaintiff's testimony, this leaves the

17  lack of treatment for Plaintiff's back problems and her lack of psychological complaints in late

18  2006 and 2007 as the only arguably proper factors in the credibility determination.  While the

19  Court can affirm a disability finding where one factor was improperly cited, *Batson v. Barnhart,*

20  *359 F.3D 1190, 1197 (9th Cir. 2004)*, it will not do so where two of the four factors were in no

21  way related to Plaintiff's credibility.

22       The Court therefore finds that the ALJ's credibility finding was not supported by

23  substantial evidence and was not free of legal error.

24                                        **REMEDY**

25       Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

26  power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

27  or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

28  In social security cases, the decision to remand to the Commissioner for further proceedings or

1   simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d
2   599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original
3   administrative proceedings, a social security case should be remanded.  Where, however, a
4   rehearing would simply delay receipt of benefits, reversal and an award of benefits is
5   appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859
6   F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no
7   useful purpose would be served by further administrative proceedings, or where the record has
8   been thoroughly developed.").

9        In reviewing the ALJ's opinion, the Court finds that his treatment of the medical opinion
10  evidence, as well as his treatment of Plaintiff's subjective complaints, were not supported by
11  substantial evidence and were not free of legal error.

12       Here, the VE testified that a person with the limitations set forth by Dr. Hirokawa would
13  be unable to work.  AR 57-58.  Accordingly, no useful purpose would be served by remanding
14  the action for further proceedings.  The ALJ's combination of errors, and the impact of the errors
15  on his other findings, therefore requires that the action be remanded for the payment of benefits.

16                                    **CONCLUSION**

17       Based on the foregoing, the Court finds that the ALJ's decision is not supported by
18  substantial evidence and is therefore REVERSED and the case is REMANDED FOR
19  PAYMENT OF BENEFITS.  The Clerk of this Court is DIRECTED to enter judgment in favor
20  of Plaintiff Theresa J. Perez and against Defendant Michael J. Astrue, Commissioner of Social
21  Security.

22

23       IT IS SO ORDERED.

24   **Dated:    September 16, 2009**              _____ **/s/ Dennis L. Beck**_____
25                                         UNITED STATES MAGISTRATE JUDGE

26

27

28